# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES OF AMERICA

-vs-                                                    Case No. 6:07-cr-211-Orl-22DAB

THOMAS E. VANDER LUITGAREN

_____

## ORDER

This cause comes before the Court on consideration of Defendant Thomas E. Vander

Luitgaren's Motion to Dismiss. Doc. No. 37. United States Magistrate Judge David A. Baker has

issued a Report & Recommendation on the Motion to Dismiss. Doc. No. 126 (hereafter "R&R"). Both

the United States (hereafter "the government" or "the United States") and Defendant Vander Luitgaren

filed timely objections to the R&R. Doc. Nos. 127, 129. The Court hereby MODIFIES and ADOPTS

in part the R&R and DENIES Defendant Vander Luitgaren's Motion to Dismiss.

## Introduction

The Magistrate held a two-day hearing on March 12 and 13, 2008, to determine whether the

United States met the standard for protecting Defendant's Fifth Amendment right against self

incrimination set forth by the Supreme Court in *Kastigar v. United States*, 406 U.S. 441, 453 (1972).

The *Kastigar* decision requires the government to show by a preponderance of the evidence that

immunized testimony was not directly or indirectly used to further the government's investigation or

to obtain an indictment by showing that the evidence used came from a legitimate, independent source.

*United States v. Bartel*, 19 F.3d 1105, 1112 (6th Cir. 1994); *Kastigar*, 406 U.S. at 460. Even if

Defendant Vander Luitgaren's immunized statements were used in violation of *Kastigar*, the indictment

will stand if the government can show that the use was harmless beyond a reasonable doubt.  *United States v. Byrd*, 765 F.2d 1524, 1532 (11th Cir. 1985).

The only potential *Kastigar* violation raised in Defendant Vander Luitgaren's objections to the R&R that requires deeper analysis is whether the presentation to the grand jury of three pieces of immunized evidence[1] was improper.  The three pieces of evidence at issue are: (1) Defendant Vander Luitgaren's explanation that the $30,000 payment he received from Co-defendant Candelario was a loan; (2) the $30,000 check from Defendant Vander Luitgaren's wife, Donna Vander Luitgaren, to Co-defendant Candelario allegedly for repayment of the loan; and (3) the handwritten note from Mrs. Donna Vander Luitgaren to Co-defendant Candelario thanking him for the loan.  There is no dispute that the government presented these pieces of evidence to the grand jury and that this evidence was part of the case file.  Doc. No. 126 p. 5.  However, because these pieces of evidence were exculpatory, the government argues that its internal policy required disclosing them to the grand jury.  Doc. No. 127 p. 3; Doc. No. 123 p. 10.  Furthermore, the government argues that this exculpatory evidence was subject to disclosure to defendants by the government's attorneys pursuant to *Brady v. Maryland*, 373 U.S. 83, 87-88 (1963).  Doc. No. 127 p. 3.

This Order first addresses the objections to the Magistrate's R&R made by the United States, and then the objections made by Defendant Vander Luitgaren.  The Court holds that presentation of Defendant Vander Luitgaren's exculpatory explanation and supporting documents to the grand jury did not violate *Kastigar*.  Even if the grand jury did not believe Defendant's explanation, presenting it to the grand jury was at most harmless error.  *See Byrd*, 765 F.2d at 1532.  Thus, the Court ADOPTS the

---

[1]In this Order, the Court also addresses Defendant Vander Luitgaren's objections to the R&R based on other pieces of immunized evidence and why those objections lack merit.

Case 6:07-cr-00211-ACC-DAB   Document 166   Filed 06/05/08   Page 3 of 15 PageID 992

Magistrate's R&R in its recommendation that Defendant Vander Luitgaren's Motion to Dismiss be denied. The Court respectfully MODIFIES one finding in the R&R, pursuant to 28 U.S.C. § 636(b)(1)(C). *See infra* p. 12. However, this modification does not affect the validity of the Magistrate's analysis.

**Note on Form of Motions**

The Court has before it two days of testimony from the *Kastigar* hearing, more than 60 pages of briefing on the motion to dismiss by Defendant Vander Luitgaren, and more than 30 pages of briefing by the government. During the *Kastigar* hearing, Judge Baker permitted Defendant Vander Luitgaren to file a 9-page legal memorandum containing additional argument as to why Defendant's Motion to Dismiss should be granted. *See* Hr'g Tr. Mar. 13, 2008 p. 120; Doc. No. 118. At the close of the *Kastigar* hearing, the United States filed an 18-page memorandum (Doc. No. 123), and Defendant Vander Luitgaren filed a 38-page memorandum (Doc. No. 125), further arguing the merits of the motion to dismiss. Counsel for Defendant Vander Luitgaren was apparently aware that his 38-page document did not conform to the local rules, because, in a footnote, he stated that he believed that length limits in the local rules did not apply, and, if they did, he simultaneously moved for permission to file the 38-page document. Doc. No. 125 p. 1 n. 1.

Counsel for Defendant Vander Luitgaren has repeatedly filed motions seeking exemptions from Court-set deadlines and the local rules, often simultaneously with substantive motions. *See* Doc. No. 80 (this Court denied six untimely motions by Defendant Vander Luitgaren, though two of the motions were later reinstated); Doc. No. 83 p. 2 (Judge Baker decided that Defendant Vander Luitgaren's motions were untimely, duplicative, and unnecessary); Doc. No. 100 p. 2 (document entitled "Motion to Dismiss Indictment and Motion for Leave to File After Criminal Scheduling Order Deadline," but

the memorandum only contained argument regarding the substantive motion and merely incorporated

by reference his co-defendant's argument in support of an extension of the deadline); Doc. No. 105 p.

2 (this Court denied Defendant's "Motion for District Court Review" of motions that were already

denied by district court and also deemed untimely and without good cause by magistrate); Doc. No.125

p. 1 n. 1 (38-page supplemental memorandum on instant Motion to Dismiss assumes the local rule on

length does not apply).  The United States pointed out that these practices deprive it of the opportunity

to respond as to whether exceptions and extensions should be allowed and instead forces the United

States to respond to the substantive motions.  Doc. No. 103 p. 3 n. 1.  While the Court is not striking

any of Defendant Vander Luitgaren's pleadings, the Court ORDERS Defendant Vander Luitgaren and

his counsel to follow the local rules and the Court's Orders in this case.  Further motions by any party

that do not comply shall be stricken.

## Analysis

### I.  Objections by the United States to the R&R

The United States objects to the R&R on the basis that the Magistrate inaccurately held that

Mrs. Donna Vander Luitgaren, "confirmed that 'Defendant did receive a loan and was innocent of any

wrongdoing.'" Doc. No. 127 p. 2.  The United States argues that Mrs. Donna Vander Luitgaren's

testimony did not confirm her husband's immunized explanation that the $30,000 loan was for the

purpose of restoring a Corvette.  *Id.*  Instead, Mrs. Donna Vander Luitgaren testified that the loan was

to pay off a boat.  Hr'g Tr. Mar. 13, 2008 pp. 94, 96.  However, nothing in the R&R is inaccurate.  As

the R&R states, Mrs. Donna Vander Luitgaren confirmed that the payment was a loan and that her

husband was innocent of any wrongdoing.  Doc. No. 126 p. 5.  That the R&R does not elaborate on the

purposes given for the loan does not mean the R&R is incorrect.  The distinction between Mrs. Donna

Vander Luitgaren's statement regarding the boat loan and her husband's statement about restoring a car may prove to be relevant at trial.  However, its omission from the R&R does not affect the Magistrate's analysis.  Thus, the United States' objection is OVERRULED.

The United States also objects to the statement in the R&R that the United States acted contrary to "'the recommended practice for prosecuting individuals who receive use immunity,' which warned against permitting an attorney familiar with a defendant's immunized testimony to participate in prosecut[ing]" that defendant.  Doc. No. 126 p. 7.  The United States argues that because the immunized statement at issue was exculpatory, Department of Justice policy[2] and *Brady,* 373 U.S. at 87-88, required that the prosecuting attorney convey the exculpatory materials to the defendants and to any new attorney prosecuting the matter, making it impossible to prevent "an attorney familiar with the immunized testimony" from participating.  Doc. No. 127 p. 3.  The United States is correct that it had a legitimate reason for not following the recommended practice of preventing disclosure of immunized exculpatory information to future counsel.  However, the R&R remains correct that the United States did not follow the recommended practice.  Doc. No. 126 p. 7.  That the United States had grounds for not following the practice does not render the R&R incorrect on this point.  Thus, the United States' objection to the R&R is OVERRULED.  Even if the R&R was interpreted as being incorrect regarding the facts of the government's course of action, that would not affect the validity of the Magistrate's analysis.

---

[2]*See* U.S. Attorney's Manual § 9-11.233, "Presentation of Exculpatory Evidence" (While the Supreme Court has not required divulging exculpatory information to the grand jury, "[i]t is the policy of the Department of Justice . . . that . . . the prosecutor must present or otherwise disclose [evidence that negates guilt] to the grand jury before seeking an indictment against such a person.").

Finally, the United States objects to the fact that the R&R indicates that the United States presented Defendant Vander Luitgaren's immunized statement to the grand jury in a manner that undermined his credibility. Doc. No. 127 p. 4. However, the Magistrate accurately characterized the grand jury testimony. Agent Woolard explained to the grand jury that Defendant Vander Luitgaren's explanation was inconsistent with his prior statement. Doc. No. 126 p. 8. Thus, the government's objection to the statement in the R&R that the government presented the evidence in a manner that called into question the credibility of Defendant's explanation is OVERRULED.

That the presentation of Defendant's loan explanation to the grand jury may ultimately have caused the grand jury to disbelieve Defendant's explanation does not mean that a *Kastigar* violation occurred. *Bartel*, 19 F.3d at 1113 ("Although the grand jury may have been suspicious of [defendant's] exculpatory testimony, the grand jury did not indict defendant . . . until after it heard the inculpatory evidence . . . which was developed wholly independently" of the exculpatory immunized testimony.) As discussed more fully below, the exculpatory evidence presented to the grand jury here did not further the investigation or contribute to the indictment and thus did not violate *Kastigar*. *See Bartel*, 19 F.3d at 1112.

**II. Objections by Defendant Vander Luitgaren to the R&R**

**1. Agent Woolard's Presentation of the Three Pieces of Immunized Evidence to the Grand Jury**

Defendant Vander Luitgaren's objections stress the idea that dismissal is required unless the government can demonstrate that nothing presented to the grand jury came from immunized testimony. Doc. No. 129 p. 7. It is true that *Kastigar* prohibits use of immunized statements in obtaining an indictment (406 U.S. at 460), and it is clear that Agent Woolard expressly communicated Defendant Vander Luitgaren's immunized explanation that the $30,000 was a loan to the grand jury. But, the

immunized information presented to the grand jury was Defendant Vander Luitgaren's own explanation

for the $30,000 payment to him by Co-defendant Luis Calendario.  If true, the explanation would

absolve Defendant Vander Luitgaren.  *See* Hr'g Tr. Mar. 13, 2008 p. 113.  As in *Bartel,* 19 F.3d at

1113-14, the presentation of Defendant's side of the story to the grand jury did not violate Defendant's

Fifth Amendment rights.  The immunized evidence presented was exculpatory, and thus it did not

"contribute to the indictment" so as to violate *Kastigar. Bartel,* 19 F.3d at 1113-14.  Any other holding

here would lead to indictments based only on the government's side of the story in those cases where

exculpatory evidence also happened to be immunized testimony.[3]

It is true that Agent Woolard pointed out to the grand jury that Defendant Vander Luitgaren's

immunized explanation was inconsistent with his prior statement.  *See* Doc. No. 126 p. 8.  Though the

suspicious timing of Defendant Vander Luitgaren's explanation and the repayment and the apparent

change in story may have raised doubts about the credibility of Defendant's explanation, the three

pieces of evidence were still properly presented to the grand jury in context as exculpatory information.

It is not for the government to decide which exculpatory statements hold water and will continue to

prove exculpatory, nor is the government prohibited from placing evidence in context.  The argument

that "compelled testimony may have been considered by the grand jurors as corroboration for the

evidence presented to the grand jury by [the agent]" is "meritless."  *Bartel*, 19 F.3d at 1113.  The

government need not prove that the witness was not disadvantaged in every way, no matter how subtle.

*Id.*  Instead, the government need only show that it had an independent basis for the inculpatory

evidence used.  *Id.*

---

[3]Thus, Department of Justice policy requires presentation of exculpatory evidence to the grand jury.  *See* U.S. Attorney's Manual § 9-11.233, *supra* n. 1.

Withholding the exculpatory evidence from the grand jury and from future attorneys working on the case would not have safeguarded Defendant's constitutional rights under *Brady* and the Fifth Amendment and did not result in a *Kastigar* violation. *See Bartel,* 19 F.3d at 1113. Agent Woolard's testimony regarding Defendant Vander Luitgaren's explanation was at most harmless error and therefore does not invalidate the indictment. *See Byrd*, 765 F.2d at 1532. Thus, Defendant's objection is OVERRULED.

**2. Agent Woolard's Knowledge of Immunized Testimony**

Defendant also objects to the R&R based on the fact that Agent Woolard had been exposed to the three pieces of immunized evidence and yet continued to investigate, interview witnesses, and testify before the grand jury. Doc. No. 129 p. 12. However, this theory is not a valid basis to object. The Eleventh Circuit has held that "[t]he focus of the inquiry under *Kastigar* . . . is not whether the prosecutor was aware of the contents of the immunized testimony, but whether he used the testimony in any way to build a case against the defendant." *United States v. Caporale*, 806 F.2d 1487, 1518 (11th Cir. 1986). Prior self-serving testimony that is not useful to the subsequent investigation cannot be used to show a *Kastigar* violation and defeat the indictment. *Caporale,* 806 F.2d at 1518-19. The government here provided an independent basis for all of the evidence presented to the grand jury, except for the three pieces of evidence that constitutes his exculpatory explanation for the $30,000 payment. Doc. No. 126 p. 7. Mere awareness of the exculpatory evidence by Agent Woolard or the grand jury does not invalidate the indictment. *Caporale,* 806 F.2d at 1518-19.

Similarly, the Supreme Court in *Kastigar* rejected the argument that the indictment should be dismissed in all cases where the same grand jury hears a defendant make immunized testimony and later indicts that defendant. *Kastigar*, 406 U.S. at 460. The Supreme Court rejected the argument that the

-8-

indictment must be performed by a different grand jury simply because it would be "difficult and perhaps impossible . . . to identify, by testimony or cross-examination, the subtle ways in which the compelled testimony may disadvantage a witness . . . ." *Bartel*, 19 F.3d at 1111 (citing *Kastigar*, 406 U.S. at 460). If it does not violate the Fifth Amendment to have the same grand jury hear a defendant's immunized testimony out of his own mouth and then later indict him, it does not violate the Fifth Amendment to have a testifying witness who is aware of Defendant's immunized statements testify before the grand jury.[4]   Thus, Defendant Vander Luitgaren's objection is OVERRULED.

Defendant Vander Luitgaren also objects that Agent Dorney's Memorandum of Interview was placed in both the official case file and the case agent's working file. Doc. No. 129 pp. 1, 7. This objection is also meritless. Awareness by the investigating agent of exculpatory statements is not the concern of *Kastigar*. *Caporale*, 806 F.2d at 1518-19. Defendant Vander Luitgaren's objection based on the inclusion of reports containing the immunized explanation in the working file is also OVERRULED.

## 3. Investigation After the Proffer

---

[4]Defendant Vander Luitgaren also objects that "at least the loan testimony was used when questioning other witnesses, specifically including Donna Lewis." Doc. No. 129 p. 5. Though Defendant Vander Luitgaren gives no citation for this proposition, the Court believes he is referring to Agent Woolard's testimony that he "might have asked in some interviews about a loan," but "was never able to confirm that a loan existed." Hr'g Tr. Mar. 12, 2008 p. 179. Defendant Vander Luitgaren also cites the discussion of Ms. Lewis before the grand jury. Doc. No. 129 p. 5. However, there was no mention of the loan in conjunction with Ms. Lewis before the grand jury (*see* Def. Ex. DD). Any mention of a loan to Ms. Lewis during an interview is speculative. If it had been mentioned, it was never confirmed. The government need not negate every abstract possibility of taint. *Byrd*, 765 F.2d at 1529. On this testimony, the possible mention of the loan is harmless error and not grounds to dismiss the indictment. *Id.* at 1532.

Defendant Vander Luitgaren argues that "[c]ontrary to the [R&R], Agent Woolard testified that his involvement prior to the proffer was very brief, and that he conducted all of his extensive interviews after the proffer." Doc. No. 129 p. 2.  But, the R&R accurately states that "prior to the proffer at issue here, Special Agents Michael Dorney and William Woolard of the GSA-OIG conducted an investigation into this matter, including extensive witness interviews (19 witnesses from five companies) as well as extensive document review." Doc. No. 126 pp. 2-3.  Agent Dorney testified at the *Kastigar* hearing that he had conducted 19 witness interviews, 18 of them before he interviewed the Defendant.  Hr'g Tr. Mar. 12, 2008, pp. 16-17.  While the R&R does not separate out the involvement of the two agents, there is nothing inaccurate in the R&R that merits correcting.  Thus, Defendant Vander Luitgaren's objection is OVERRULED.

**4.  Involvement by Mr. Angel Rodriguez-Vasquez**

Defendant also objects on the basis that the R&R does not mention Angel Rodriguez-Vasquez. Defendant argues that the plea agreement with Mr. Rodriguez-Vasquez was a product of Defendant Vander Luitgaren's immunized statements.[5]  Doc. No. 129 pp. 9-10.  However, the government knew of Mr. Rodriguez-Vasquez's involvement long before the proffer.  The government subpoenaed Mr. Rodriguez-Vasquez's bank records in December of 2005, before Defendant Vander Luitgaren's March 2006 proffer.  Hr'g Tr. Mar. 12, 2008 Gov't Ex. 4.  While the government bears the burden of showing by a preponderance that a *Kastigar* violation did not occur, Defendant cannot raise theoretical *Kastigar* claims based upon every event that occurred post-proffer.  *See Byrd*, 765 F.2d at 1529 (the government

---

[5]Defendant Vander Luitgaren did not mention Mr. Rodriguez-Vasquez and many other of these objections in his motion to dismiss (Doc. No. 37), but to avoid additional delay, the Court will set aside the issue of waiver and consider all of Defendant's objections to the R&R.

is not required to negate every abstract possibility of taint).  That the government made a plea agreement at some time after the proffer does not automatically indicate that immunized testimony was the basis for the plea agreement.  There is nothing to indicate that Defendant Vander Luitgaren's exculpatory explanation caused Mr. Rodriguez-Vasquez to agree to testify against Defendant Vander Luitgaren.  At the *Kastigar* hearing, the government presented copious evidence preceding the proffer that could have given Mr. Rodriguez-Vasquez an incentive to cooperate.  *See, e.g.,* AK Speciality Vehicle's Voluntary Disclosure Report, Hr'g Tr. Mar. 12, 2008 Gov't Ex. 1.

Contrary to Defendant Vander Luitgaren's argument, this case is not like *United States v. Hampton*, 775 F.2d 1479, 1489 (11th Cir. 1985), where the Eleventh Circuit held that "the government made no effort . . . to establish the independence of [the guilty-pleading defendant's] testimony or to demonstrate the source of the evidence confronting [the guilty-pleading defendant's] testimony at the time of the plea agreement."  Instead, the United States presented a great deal of evidence implicating Mr. Rodriguez-Vasquez that the government had before the proffer.  That the government received a second production of documents regarding Mr. Rodriguez-Vasquez from Banco Popular after the proffer does not negate the fact that the documents were produced pursuant to a pre-proffer subpoena (dated March 2, 2006).  *See* Hr'g Tr. Mar. 12, 2008 pp. 40-45; Gov't Ex. 5.  Thus, Defendant's objection based on Mr. Rodriguez-Vasquez's plea is OVERRULED.

**5. Agent Woolard's Testimony That He Knew that Co-Defendant Candelario paid $30,000 to Mr. Vander Luitgaren based on bank records and "interviews [plural] of Vander Luitgaren"**

Defendant Vander Luitgaren objects to the R&R because Agent Woolard testified that "he knew that Mr. Candelario paid $30,000 to Mr. Vander Luitgaren 'based on bank records . . . and interviews [plural] of Vander Luitgaren.'" Doc. No. 129 p. 2. Defendant argues that Agent Woolard's use of "interviews" means that Agent Woolard used information from both the proffer and the prior interview at Defendant Vander Luitgaren's home. *Id.* This objection is patently meritless. When asked about using "interviews" plural at the *Kastigar* hearing, Agent Woolard pointed out that he was only personally present at the interview at Defendant's home, not at the proffer, and that he misspoke if he said "interviews" instead of "interview." Hr'g Tr. Mar. 12, 2008 p. 172. Agent Woolard knew that Co-defendant Candelario had paid Defendant Vander Luitgaren $30,000 based on an independent source-bank records that he received prior to the proffer. Hr'g Tr. Mar. 12, 2008 Gov't Ex. 3. Bank of America gave the government bank records regarding the payments in February 2006 (Hr'g Tr. Mar. 12, 2008 Gov't Ex. 3), but the proffer was not until March 2006 (Doc. No. 126 p. 4). Thus, Defendant's objection is OVERRULED.

**6. Defendant Vander Luitgaren's Statements Regarding the Propriety of the Payments**

The R&R states that Defendant Vander Luitgaren admitted to making improper payments. Doc. No. 126 p. 3. Defendant Vander Luitgaren argues that it is disputed whether he admitted that the payments to him were improper.[6] *Id.* Defendant Vander Luitgaren is correct that at his proffer, he disputed whether the payments were improper. Thus, the R&R is respectfully MODIFIED pursuant to

---

[6]Defendant Vander Luitgaren now attempts to show that the payments were proper, because his employer was aware of them. Doc. No. 129 p. 3. The propriety of the payments is not at issue on the Motion to Dismiss and instead is a question of fact for the jury.

28 U.S.C. § 636(b)(1)(C) to reflect that this fact remains in dispute.  However, this discrepancy does not affect the validity of the Magistrate's analysis, nor this Court's decision to deny the motion to dismiss.

## 7.  Exhibit 17: AK Specialty Vehicles Code of Conduct

Defendant Vander Luitgaren argues that Exhibit 17 (AK Specialty Vehicles' Code of Conduct) was somehow a product of the immunized proffer testimony because it was "requested and received after the immunized testimony." Doc. No. 129 p. 4.  However, this objection lacks merit.  The United States knew that AK Specialty Vehicles was Defendant Vander Luitgaren's employer prior to the proffer, based on AK Specialty Vehicles' Voluntary Disclosure Report.  Hr'g Tr. Mar. 12, 2008 pp. 147, 148, Gov't Ex. 1 p. 1.  The United States has shown that investigation into the policies of that employer in relation to the alleged kickback scheme (of which the government was also enlightened through AK Specialty Vehicles' Voluntary Disclosure Report (Hr'g Tr. Mar. 12, 2008, Gov't Ex. 1 p. 1)) was not a product of Defendant Vander Luitgaren's proffer.    Thus, Defendant Vander Luitgaren's objection is OVERRULED.

## 8.  Mention of Afghanistan

Defendant Vander Luitgaren also objects to the R&R by arguing that because the government stated that witnesses will be coming from various countries, including Afghanistan, the government must have used immunized testimony to develop witnesses.  Doc. No. 129 p. 6 (citing Joint Motion for Date Certain (Doc. No. 93)).  Defendant Vander Luitgaren bases this assertion on the fact that pursuant to his proffer, he provided a letter that his son wrote while he was living in Afghanistan.  *Id.*  Defendant Vander Luitgaren's son is now deceased.  Hr'g Tr. Mar. 13, 2008 pp. 98-99.  Neither Defendant Vander Luitgaren nor the Court knows what witness, if any, will be coming to testify from Afghanistan, nor how this theoretical witness was developed.  Defendant has no basis to object based on *Kastigar* with so little

information.  "The mere theoretical possibility of an eventual *Kastigar* violation at trial is no grounds

for dismissing the indictment.  If and when the government seeks to elicit or introduce evidence

indirectly derived . . . in such a manner, then [Defendant] would have cause to complain."  *Byrd*, 765

F.2d at 1531.  At this point, the reference to Afghanistan does not indicate that the government used

immunized testimony to further its investigation.  *See* Hr'g Tr. Mar. 13, 2008 p. 70 (Judge Baker told

Defendant that future potential *Kastigar* violations are not at issue).  Thus, Defendant's objection is

OVERRULED.

**9.  Whether Agents or Counsel for the Government Had Copies of Civil Depositions**

Defendant Vander Luitgaren also tries to make an issue out of whether copies of civil depositions

of Defendant Vander Luitgaren and of Larry Sodomire were provided to counsel for the government or

to Agent Dorney.  Doc. No. 129 p. 3.  But, Defendant Vander Luitgaren simply states that AUSA Perez

emailed the depositions to the government's attorney, James Kurosad, without any legal argument that

there was a *Kastigar* violation.  *Id.*  Agent Woolard testified that he had not seen the civil deposition

transcripts until January 2008 (Hr'g Tr. Mar. 12, 2008 pp. 153-54), and Agent Dorney testified that he

has still never seen these deposition transcripts (Hr'g Tr. Mar. 12, 2008 pp. 108-09).  The government

has adequately shown that the civil deposition testimony was not used in furtherance of the investigation

or to indict Defendant Vander Luitgaren.  Thus, Defendant Vander Luitgaren's objection is

OVERRULED.

### Conclusion

Based on the foregoing, it is ORDERED as follows:

1.  The Magistrate's Report and Recommendation (Doc. No. 126), filed March 21, 2008, is

MODIFIED and ADOPTED in part as indicated herein.

2.  Defendant Thomas E. Vander Luitgaren's Motion to Dismiss the Indictment (Doc. No.

37), filed on December 28, 2007, is DENIED.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 5, 2008.

ANNE C. CONWAY
United States District Judge

Copies furnished to:
Counsel of Record
Magistrate Judge